Well, good afternoon, everyone. And Judge Aldisert, we welcome you. We're glad to – Judge Greenaway and I are both glad to see you, and we're pleased to have you. We're very happy to – I'm happy to be in such distinguished judicial company. The pleasure is ours, as you know. Okay. All right, our case this afternoon will be the case of Randolph Carson v. Richard Mulvihill et al., Ms. Forster. I should say before we begin arguments in this case that Ms. Forster was at one time one of my law clerks many, many years ago, and I hope counsel doesn't have any objection to her handling this matter in a pro bono fashion as she has. I'd just like – thank you – I'd just like to say that opposing counsel has been extremely professional and helpful, especially at the beginning when I was new to the case. Good afternoon. May it please the Court. I'm Paige Forster, and I represent the appellant Randolph Carson. I'd like to reserve three minutes for rebuttal. That request will be granted. This appeal presents two questions, whether the district court abused its discretion in denying my client's motion for pro bono counsel and whether it later erred when it entered summary judgment for the defendants. Resolution of the first question in my client's favor – Make sure you keep that microphone up a little bit and keep your voice up. Yes. Resolution of the first question in my client's favor resolves the second question as well. If this Court concludes that pro bono counsel should have been appointed, the Court should also vacate the entry of summary judgment against Mr. Carson because that judgment was a direct result of my client's inability to effectively represent himself. He was not able to create a factual record or to present legal arguments. And in this particular case, the denial of pro bono counsel was not only an abuse of discretion as the case law shows, but it also caught Mr. Carson in what this Court has called a paradox. The magistrate judge, Donio, denied the motion for pro bono counsel, stating that Mr. Carson didn't need an expert to properly present the case for him, the claims for him. And later, the district court judge granted summary judgment, partly because it said that Mr. Carson had not come forward with facts tending to show that the medical treatment was necessary. But of course, to come forward with facts showing that a treatment was medically necessary, Mr. Carson would have needed the services of an expert, and being a pro se prisoner, he was not able to – Justice Forster, your opposing counsel argues that the fact that the district court granted summary judgment disposes of the fact – disposes of the question of whether or not the court abused its discretion in not appointing a counsel. What's your answer to that question? I think that that argument is a matter of conflating some standards, because the Tebron threshold factor, which is what my opposing counsel was referring to, is whether the claim has arguable merit in fact and law. And I think that's just – Of course. Ms. Forster, I am very much interested in that particular issue, that threshold question of whether there were – the issues were arguable – possessed arguable merit in fact and law. So in your argument, I'd like you to address that. Thank you. Thank you, Your Honor. I think that the standard is, as Judge Becker originally articulated it, merely a threshold. It's a matter of deciding whether the claim is frivolous and whether it's facially colorable, given the facts that are alleged. I don't think that the standard is the same as a summary judgment standard. Well, if we say it's not frivolous, does that mean it's of arguable merit? I think the way that it was outlined in Tebron, that would be true. Not frivolous equates to arguable merit, facially stating a claim. Okay. And I don't know if Judge Aldersert has further questions about that. It's not a standard that I – Yes, I would like you to tell me of the various issues you are presenting, condition of confinement, denial of medical care, imposition of housing fee, equal protection violation from denial of the wheelchair footrests, and excessive force. Do you say that there is a serious question in each of those? Your Honor, I do. One thing I'd like to just point out is that Judge VanAskey's order that appointed counsel in this case directed the parties to address the housing fee in particular. So that was one that I didn't feel that I could subject to the normal weighing of what should go into a brief and what shouldn't. I thought that had to be in according to the court's order. I think for the other claims, yes, there is a question. The claims that are the most compelling to my mind are the lack of access to the toilet and also the denial of medical care, in particular the denial of prescription medications. Let me ask you a question on another one of them quickly. One of the listed claims you just mentioned was the equal protection claim, and what I didn't understand about that is I didn't see a specific ruling on it. You know, obviously there was a sort of a blanket ruling, summary judgment as to all, but there wasn't a specific ruling and reasoning that I discerned on equal protection. Does that violate 1291? Should there be, do we really have a final order? Yes, no, it does not violate 1291. There's no finality problem. The case is final and appealable. The judgment, excuse me, is final and appealable, but this court has in the past instructed district courts that they should look at pro se pleadings and extract all the claims from them, and there is case law that I cited in the brief where this court has directed the district court to address a claim that it didn't identify and address. So it's a matter of the district court overlooking and not paying sufficient attention, but it's not a matter of finality. All right, so one potential resolution of this matter would be reversing on summary judgment and ordering the district court to address equal protection specifically. It would, and if this court vacates and reverses and remands, excuse me, vacates and remands, there would need to be pro bono counsel appointed at the district court level to appropriately represent my client. Okay. Now, what's wrong with us looking at this case backwards, so to speak, and saying that, looking at the summary judgment question, and if we feel that there was not complexity here and that the plaintiff had not pled, properly pled his case and find that the court was right on summary judgment, doesn't that obviate the need to have to consider the abuse of this question on the failure to appoint counsel? No, it doesn't, Your Honor. It does not, and the reason is that Tabron itself, the case laying, of course, the factors in the Third Circuit for denial of pro bono counsel paved the way, showing that a summary judgment motion that's entered without pro bono counsel, when pro bono counsel should have been appointed, is an infirm order that should be vacated and the case should be remanded. I think it was Tabron and also Montgomery versus Pinchak where the court specifically said the plaintiff's ability to adduce the factual record he needed to adduce to survive summary judgment was compromised by the abuse of discretion not appointing pro bono counsel, and so I think the pro bono counsel question really is one that should be addressed first, and I think to leap forward to summary judgment would be to miss... So your position would be that we have to address it first? Yes. In this case? Yes, in this case. And if we disagree with you, of course, if we disagree with you on the Tabron question but agreed with you on the summary judgment argument in one part or all, there's nothing to preclude us from either ordering counsel to be appointed or for the district court to order counsel to be appointed, reevaluating the Tabron factors at that stage, is there? That's correct. Nothing to preclude. All right. Let me ask you about the... One part of the condition of confinement claim in particular, and the record is somewhat scant as to the actual facts and what took place here. We know he was in a medical unit, and the dimensions of the cell are there, and there was his bed. He, of course, was in a wheelchair, and there was a toilet. And there's the allegation that at least on one occasion there was another inmate placed in that cell, which precluded him from getting to the toilet. You know, have there been enough facts pled in that claim to enable the plaintiff to meet his burden? Yes, there have, and it comes back to this basic motion for summary judgment standard. There's a genuine issue of fact here because you have the plaintiff pleading with his approximate measurements as best he can make that his wheelchair can't move, and thus he was unable to reach the toilet. And then you have the defendant saying simply that's not true. And the defendant's contradiction in their briefs, by the way, was insufficient. They didn't adduce any facts that he could have reached the toilet. They merely declared without record citations that he could. And so you just have... It's the classic two parties saying different things. And frankly, my client's facts that he adduced are stronger than any facts that were adduced by the other side. But the issue remains to be put before a trier of fact, whether my client could reach the toilet and for how long. Now, may I ask this question? How long a period of time was there more than one person in that cell? Your Honor, the record doesn't answer that question. It seems to me that all that we have before us, that this wasn't a pattern, it was just one individual instance of being not denied total access to the toilet, but it was difficult to reach the toilet. Now, am I incorrect? Yes, Your Honor, that is an incorrect statement because the allegation was that the toilet was completely inaccessible. And the measurements that my client provided bore out that fact. There was literally enough space for the wheelchair to sit, but not for it to roll anywhere. And so that was a total denial. And that was one instance? Well, that was every time that he was double celled. And in his pretrial memorandum, he said that evidence he wanted to present, of course, he wasn't able to participate in discovery in any meaningful way, and so he couldn't actually get these records on his own. He couldn't get the housing logs, but he said that they would show how many nights he was double celled. All right. Okay. We don't know that. And we don't know whether a complaint was made by him to prevent that from happening again. Do we? That's correct, Your Honor. We don't. The record is incomplete in many places, and you've put your finger on a couple of them. I don't see... Well, I'll tell you, it's not a question... The record is incomplete. The question is whether the plaintiff has made a prima facie case, and he has the burden there. And quite frankly, I will say this, and just speaking for myself, if we... was this deprivation of the toilet, I don't see, in one instance, I don't see a constitutional issue there. First of all, this court has said that when a prisoner is proceeding pro se, that affidavits are about the best that can be expected of him, and that's what my client produced. He produced what are equivalent to affidavits, his pleadings. And in addition, I think the record does demonstrate that it was more than just one occasion. We have the altercation with Sergeant Nilsen, and that was about double selling, but my client wouldn't have known about the problems that double selling creates unless it had already taken place before that point. So he couldn't have become so worked up for the first time, because he had to presumably see the cot in the cell and to experience that. And he does refer, if you look at his pretrial memorandum, he does talk about occasions when he was confined to his bed because he was double sold, and it's by no means a single instance. Let me ask you this question about the pretrial detainee, convicted person status. You're attempting to have us articulate a different standard of care. What's the basis for that, and it seems, as I was considering your arguments, it just seemed unworkable. That's interesting that you put it that way. I actually thought that it was rather workable. I think that the Hubbard standard. I would hope that you would. The Hubbard standard is one that's pretty simple. It's equivalent to a rational basis test. I think, first of all, to back up, my client has a dues to claim either way, and so the facts are sufficient for him to survive summary judgment, even if this court continues to on the Eighth Amendment Estelle standard, but the Hubbard standard is really the one that controls, and so many cases from this court over the years confirm that the Hubbard standard is the one that controls a denial of medical care claim by a pretrial detainee, and so what I was arguing is that this court should effectuate that standard and actuate it by giving it some legs, and the legs that it has are the ones this court articulated in the Hubbard case in 2005. So the question would be, was the medical care denied for a rational purpose? I think that's an easily enough answered question, and we could answer questions about prisoners being transported for distant medical care, being able to show up for trial, being recuperating from surgery when trial comes up, those kind of questions, and then whether the denial serves that rational purpose, and so that's the standard that I think applies in this case. Except, except this is a case in a medical wing of a penal institution, is that right? That's where, that's where he was housed, yes, Your Honor. Okay. And there are certain issues that are, are not, are they not indigent to a medical situation? For example, the additional double selling and things like that. I'm not sure that we can make a rule that would have, in this case, that would affect a situation that was not a medical situation. I think that the resolution of this case could certainly be limited narrowly to its facts. I'm not asking for a broad ruling. I think that the bottom line is that no matter where a prisoner is housed, whether he has to be housed in a special medical unit or not, the Constitution still reaches him there in whatever portion of the prison he's in, and mandates that he have access to the minimal civilized measure of life's necessities, which is of course the Eighth Amendment standard, but then beyond that, to not be punished as a pretrial detainee. Okay. Thank you. I understand your position. Thank you. We'll have you back on rebuttal.  Mr. Dugan? Yes, Your Honor. And you have nine minutes? Correct, Your Honor. All right. May it please the Court? My name is James Dugan. I'm with Atlanta County Counsel's Office, and at the outset, let me say we appreciate Ms. Forster's efforts in this case. Her generosity, her firm's generosity, helps elevate our profession, and we appreciate that. Your Honor, I'm going to... And I should say, as do we. I was going to address four elements of this case, the conditions of confinement, the excessive force, the housing fee, and the denial of pro bono counsel. If I could start with conditions of confinement, which is essentially the access to the toilet issue. He was housed in a medical unit. There are six cells in medical right, two cells in medical left. The Atlanta County Justice Facility has no control over what inmates are classified medical. Any particular day, they may be given a trove of inmates who have to be housed in medical. They do the best they can. This is where the deference to the administrators in a penal institution by the courts is vital. In Mr. Carson's case, the system worked perfectly. He had a complaint. He went to administration. He said, I don't want a second inmate. It hinders my access to the toilet. They said, you're right. We're going to put you last. Everything else has to be filled up before another inmate goes in your cell. It has to be an emergent circumstance for that to happen. That's just the way it's supposed to work in our situation under our grievance policy, and it was settled at that informal stage. He agreed to the resolution. He did not appeal it. He did not grieve it. Then on June 4th, 2007, an inmate is brought to his cell as a roommate. He throws a fuss. He bangs on the window. He causes a ruckus. Inmates can't hear the TV, and that's when the excessive force claim comes in. I just want to point out that June 4th was two months before he filed his complaint, and if you look at the officer's records, the reports, it clearly indicates that all the other units were full. He had no choice but to put the new inmate in with Mr. Carson. Mr. Carson wasn't even sanctioned for that. He was locked down for a five-minute period. There was another incident a month and a half later, July 24th, 2007, where once again an emergent situation came up, no other cells available. They had to put an inmate with Mr. Carson. He did the same thing. He threw a fit. He refused to obey commands, and he was actually sanctioned with a verbal reprimand after a hearing that, once again, he did not oppose. Pursuant to Heck v. Humphrey, he can't even argue those instances at this point, Your Honors. We have to look at was there a rational basis, was there a legitimate basis for the government to institute this position. Overcrowding in a jail is something beyond the ability of the jail to control. They have to address it in the best possible manner they can. They did in this case, and they put Mr. Carson at the end of the line. They gave him every possible courtesy before they had to put another inmate in his cell. Certainly, there was a legitimate governmental interest in this case, and it was applied in the least intrusive way possible. As far as the excessive force claim, Your Honors, this is not a case where a man was beaten or kicked or punched or sprayed with mace or clubbed. Even if you believe every syllable out of Mr. Carson's mouth, the greatest violation he can allege is, Sergeant Nielsen pushed my wheelchair into my cell too forcefully, causing my legs to strike the bump. And I would just, I would rue the day when it was the law that that was the floor now. Then every case would go to trial. There has to be a position where the case just doesn't withstand summary judgment scrutiny. There was a situation where Mr. Carson was being disruptive, causing problems. It had to be addressed. This is a penal institution. The rules have to be followed. It's not optional. Sergeant Nielsen did what he had to do, lock down the inmate. The inmate refused to be locked down. He held the wheels of his wheelchair. Officer Nielsen pulled him into the cell, turned him around. According to the officer, Nielsen placed him in the cell. According to Carson, pushed him in violently. Certainly, according to Whitley, the need for force was necessary. We had a prisoner who was being disruptive. The relationship between the force and the incident is certainly related. This wasn't a clubbing incident. He wasn't struck. His wheelchair wasn't tipped over. He was moved into the cell in response to Carson's actions. The injuries. Even once again, believing every word that Mr. Carson says, his injuries were bruised legs. The extent of threat to the safety and security of the facility is obvious. These things can spread like wildfire. Inmates were upset they couldn't listen to their TV. Security and discipline has to be returned to a facility when an incident happens. In efforts to temper the situation, it's our position that the solution was remedied as humanely as possible, Your Honors, and there was no tempering needed. This is not a situation where you can sit down and have a heart-to-heart discussion with the inmate and ask him to please obey the orders. As far as the housing fee, I think this is pretty much a decided issue by the Tillman versus Lebanon County case. I've also supplied information concerning a case entitled Barney versus Camden County, where the housing fee was applied to pretrial detainees and it was also found to be constitutional. Our housing fee in Atlanta County is $50 per month, which doesn't cover the cost of incarcerating an inmate for one day. It certainly is not onerous. It certainly is not a punishment. The Camden and Barney case, they charge $5 a day, $150 a month, and that was ruled permissible. Getting to the pro bono, when you assign the Tabron factors and you afford the magistrate judge deference in her decision, pro bono counsel cannot be allowed. I just lauded Ms. Forster earlier. Unfortunately, she is in short supply. We don't have enough Ms. Forsters and we don't have enough firms like Ms. Forsters in order to supply this pro bono counsel for everyone. There is no right to counsel in a civil case. Mr. Carson presented a 21-page complaint, legibly printed, coherent, cogent, elicited all the facts and his constitutional deprivations. He cited case law throughout his case. He cited constitutional statutes or cites. He said he needed an expert. I will allow Ms. Bowers to speak as to the medical issues. As far as the excessive force issue and the conditions of confinement issue, I would present to your honors these are strictly factual issues. What about his complaint about his inability to get discovery? It was such as the number of times that someone else was put in that cell. He got every piece of discovery he requested, your honor, and that's reflected in his writings. He may have said something in his pretrial about what he intended to have. He never requested anything beyond what he got. He received his entire file, his classification file, his criminal file, his medical file, and that's what he requested. That's what he was provided. I confirmed this during his deposition that he had all these materials. You know, part of your argument was you said that counsel was not available. That's nowhere in the Tabron factors, is it? Well, that's one of the policy considerations that Tabron considered. They said there's not counsel for everyone and we have to be judicious. And here are the guideposts you should look at. I'm sorry, your honor? And here are the guideposts that you should look at. Correct, your honor. But there are limitations. We can't be in a perfect world. Maybe everyone would have free counsel. It simply is impractical and impossible. In a case like Carson, once again, if you say the magistrate judge abused her discretion in this case, that establishes a floor. Every inmate or every indigent who comes before any lower court from this day forward will get counsel if he's at Mr. Carson's level or below. Mr. Dugan, I'd like you to comment on your position on the threshold question of Tabron. Is there arguable merit in fact and law to the contentions? At the point in time of summary judgment, there was not. When he filed his complaint, it's a different standard because nothing has been fleshed out. If you mouth the proper words, excessive force, conditions of confinement, they are arguable meritorious cases. Once we get to the summary judgment stage and nothing has been brought forward to support those claims, Tabron threshold analysis can be applied again, at which time it can be determined that the case has no arguable merit in fact or law, as the lower court said in this case. Okay. Okay. All right, Mr. Dugan, thank you very much. Thank you, your honor. We'll call on Ms. Barish. Good afternoon, your honors. I'm prepared to address the issues of the denial of medical care claim and to touch upon the equal protection claim. By way of background, we're dealing with a plaintiff that has been housed in the medical facility since the beginning of his incarceration, which was in December of 2006. With regard to the medical issues, the plaintiff complains that he was denied medication and foot rests on his wheelchair. The record establishes that there's really a non-issue with regard to the heart medication. In the appendix at page 372, you'll see the plaintiff's testimony that his heart medication is not at issue. What remains at issue in the briefs in which is addressed by plaintiff's counsel is the issue of the asthma medication. I cited to the testimony by the plaintiff where he indicates he did not receive his asthma medication immediately upon his entrance to the prison. When I questioned him about when he last took the medication, I cite to his testimony where he gives me a date in 2000. Plaintiff's counsel cites to that testimony in her reply brief and argues that it's questionable what date he's referring to and indicates that it could have been in 2004. Regardless if it was in 2000 or 2004, we're looking at a period of two to four years where he wasn't even taking this asthma medication. It's a non-issue as to whether he had access to medical care because he was in the medical unit his entire time. He had access to a nurse every day who would come around and bring him medication. So on its face, I don't believe that this case would meet either the standard under the Eighth Amendment or the Fourteenth Amendment. With regard to the issue of whether the Eighth Amendment or the Fourteenth Amendment applies, I don't believe there's any case law supporting the contention that the Fourteenth Amendment should apply to the instance of denial of medical care. There is case law that's cited in Ms. Forrester's brief that talks about the Hubbard standard, but the Hubbard case is not about denial of medical care. If you look at the Boring case which she cited, you'll see that this court has applied the Estelle standard still for situations of pretrial detainees. If we look at it under either standard, there's certainly not deliberate indifference to a serious medical condition, and that's what was argued to the judge upon summary judgment. Plaintiff's counsel contends that the appropriate standard should have been the Fourteenth Amendment. If you rely on the same facts and argument that are presented in the motion for summary judgment, this doesn't meet the Fourteenth Amendment standard either. There's no indication that anything was done as a punishment to the plaintiff. These aren't conditions that even invoke a serious health condition under any standard. So I agree that it is not clear in this circuit whether you want to adopt Hubbard and apply it in the instance of a denial of medical care, but the case law that does exist out of the circuit does still apply the Estelle standard. And if you want to change the standard, I still don't think it changes the fact of this case or would require you to overturn the court's decision on summary judgment. With regard to the equal protection claim, Judge Greenaway touched upon the fact that the lower court judge did not specifically reference that claim. However, if you look at the record in this case, there's not enough allegations to get you to an equal protection claim on its face. Nothing in the complaint or anything that's in the record would even surmount to a cognizable claim under equal protection. Any questions I can answer? Yes, I'm going to ask you on the basis you heard my inquiry of your colleagues, and especially Mr. Dugan, looking at only the facts that were pled by the appellant here. At that stage, what is your view as to whether, on the basis of those facts, there were arguable merit, in fact, in law of those contentions? The point is that that's the threshold before we go through Tabron's laundry list. I believe that at that stage the plaintiff met the threshold with his complaint. In what respect? With regard to my clients, he certainly claimed that he was denied medical care. And at that stage, the appropriate standard of view, which would have been a motion to dismiss, this is not a case that I would have considered filing a motion to dismiss him, because at that initial stage he had pled enough to invoke his rights with regard to denial of medical care. That's enough. Okay. That's enough. You've answered my question. Thank you. Certainly. Anything else? Do you have anything else to add? No, Your Honor. Okay. Thank you. Thank you. Ms. Forster? On rebuttal? Yes. Mr. Dugan argued that the system worked perfectly for Mr. Carson, that he complained about being double-selled and that there was a decision that it would only happen in emergencies. There's a couple of problems with that argument, and one of them is discussed in the reply brief. The timeline is off. The conference where the prison officials committed to not double-selling him except in emergencies was after his complaint was in the prison mailbox. So the conference took place before the date of the filing of the complaint on the district court docket, but after he had put it in the mailbox to be mailed. And so his contention, which he explained at the deposition, and I believe I cite to it in the gray brief, was that the conference was actually in response to his complaint being filed. This is not a situation where an inmate had his concerns addressed and then went ahead and filed a lawsuit anyway, although I should note that even if he had done that, his claims aren't mooted. He can continue to seek damages for the violation that took place in the past, even if it is ended. And there is also case law about that in the briefs. And it's interesting, Mr. Dugan's summary judgment motion in the district court didn't say that these two dates he refers to, June 4th and the other date, were dates on which Mr. Carson's cell was absolutely the last cell available. I'm not sure that the record says what Mr. Dugan said. I apologize that during the argument I wasn't able to flip through my appendix and find it, but that at any rate was not advanced in the summary judgment motion, and Mr. Dugan didn't say that clearly in his brief on appeal, that in those two situations it was the last cell available for double selling. He also said that pursuant to Heck v. Humphrey, Mr. Carson can't even raise these claims. And to the extent that Mr. Dugan was arguing that these claims are waived because they were not administratively exhausted, that argument's been waived on appeal. It was not raised in Mr. Dugan's brief, and so therefore this court should not address it. In terms of the force issue, Mr. Dugan said that even if we believe everything that Mr. Carson said, that all Nelson did was forcefully wheel him into his cell. He said that he wasn't tipped out of his wheelchair, and I would agree that he wasn't. The allegation is that he was actually launched out of his wheelchair, which to my mind is no better than being tipped. And the question here really is not the extent of the injuries. The case law is extremely clear, Hudson v. McMillian from the Supreme Court being followed on by the circuit. The question is not the extent of the injuries. The extent of injuries is one of the whitley factors that can be considered when deciding whether the use of force is excessive, but it's only one of the factors. And really the question is, was the force necessary? And once an inmate who is in his wheelchair and is immobile without the wheelchair is in his cell, all that remains to be done is to shut the door, and then any threat has been dealt with. And so once that inmate is in his cell to launch him out of his chair into the bed, taking advantage of his paraplegic state, it's beyond the force that's needed, and that's why this was a violation that was alleged. And there is an issue of fact about that. Okay. Thank you, Ms. Forster. Thank you. And we thank all counsel for a case that was very well briefed and argued, and once again we want to thank Ms. Forster and her firm, Reed Smith, for taking on this case pro bono and for the work they did. And we'll take the matter under advisement. I would like to echo that. When I practiced law, I was in the building right next to Reed Smith, and then when I became a common pleas court judge, I was the original calendar control judge. And when I thought of Reed Smith, I'm thinking of Mellon Bank and U.S. Steel, and to see the competence of this young lady representing an indigent prisoner, it's a beautiful feeling that we have a new era, and thank God for that. Thank you, Judge Aldersert. And as we said, we'll take this matter under advisement. We'll rise and you'll clear the courtroom and then we'll conference. Thank you.